1
2
3
4
5
6
7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   JAMESON BEACH PROPERTY                    No.  2:13-cv-01025-MCE-AC
     OWNERS' ASSOCIATION, et al,
12
                    Plaintiffs,
13                                             **ORDER**

          v.
14
     THE UNITED STATES OF AMERICA.,
15   et al.,

16                  Defendants.

17

18        Through this action, Jameson Beach Property Owners' Association

19   ("Association"), Gene Landon ("Landon"), and Helen Nicolaides ("Nicolaides")

20   (collectively referred to as "Plaintiffs") seek relief against the United States of America,

21   the United States Department of Agriculture, Forest Service ("USFS"), El Dorado

22   County, Caltrans, and Does 1 through 25 (collectively "Defendants") for allegedly using

23   Plaintiffs' real property without compensation and in a hazardous manner which exposes

24   Plaintiffs to significant liability.

25        Plaintiffs allege eleven causes of action: (1) inverse condemnation; (2) deprivation

26   of civil rights due to local government policy and custom; (3) act or ratification by official

27   with final policy making authority in violation of constitutionality guaranteed rights; (4)

28   violation of the equal protection clauses of the U.S. Constitution and the California

                                        1

1   Constitution; (5) violation of the due process clauses of the U.S. Constitution and the

2   California Constitution; (6) private nuisance; (7) trespass; (8) public nuisance; (9)

3   violation of the unfair competition law; (10) intentional infliction of emotional distress; (11)

4   negligent infliction of emotional distress; (12) unjust enrichment; and (13) negligence.

5   (ECF No.2.)

6       Presently before the Court is Plaintiffs' Ex Parte Application for a Temporary

7   Restraining Order ("TRO") filed on May 22, 2013.  Plaintiffs ask the Court to enjoin

8   Defendants from "risking the public and Plaintiffs serious harm or death, and the

9   Plaintiffs to exposure for liability, from implementing the parking kiosk impediment to

10  traffic circulation, from continuing the rope boundary preventing safe fire and life safety

11  access, as well as safe pedestrian access to and from the Beach; from parking

12  perpendicular (or at all) along the Association Roadway, and from any other Defendant-

13  created unsafe element on or adjacent to Jameson Beach Road, and the Association

14  Roadway." (ECF No. 7 15-16.)  For the reasons described blow, Plaintiffs' Application for

15  a TRO is denied.

16

17                              **STANDARD**

18

19      The purpose of a temporary restraining order is to preserve the relative positions

20  of the parties—the status quo—until a trial on the merits can be conducted.  Granny

21  Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 438-39 (1974) (temporary restraining

22  orders "should be restricted to serving their underlying purpose of preserving the status

23  quo and preventing irreparable harm just so long as is necessary to hold a hearing, and

24  no longer"); LGS Architects, Inc. v. Concordia Homes of Nev., 434 F.3d 1150, 1158 (9th

25  Cir. 2006) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).

26  Issuance of a temporary restraining order as a form of preliminary injunctive relief "is an

27  extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is

28  entitled to such relief."  Winter v. Natural Res. Defense Council, 555 U.S. 7, 22 (2008).

1    Plaintiffs have the burden of proving the propriety of such a remedy by clear and

2    convincing evidence.  See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); Granny

3    Goose, 415 U.S. at 441.  The propriety of a TRO hinges on a significant threat of

4    irreparable injury that must be imminent in nature.  Caribbean Marine Servs. Co. v.

5    Baldridge, 844 F.2d 668, 674 (9th Cir. 1988).

6         In general, the showing required for a temporary restraining order is the same as

7    that required for a preliminary injunction.  Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush

8    & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking a temporary

9    restraining order must establish that he is (1) "likely to succeed on the merits;" (2) "likely

10   to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of

11   equities tips in his favor;" and (4) "a preliminary injunction is in the public interest."  Sierra

12   Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing Winter, 555 U.S. at 20

13   (2008)); see also Am. Trucking Ass'ns, Inc. v. City of L.A., 559 F.3d 1046, 1052 (9th Cir.

14   2009) (adopting the preliminary injunction standard articulated in Winter)).  "If a plaintiff

15   fails to meet its burden on any of the four requirements for injunctive relief, its request

16   must be denied."  Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal.

17   2010) (citing Winter, 555 U.S. at 22).  "In each case, courts must balance the competing

18   claims of injury and must consider the effect on each party of the granting or withholding

19   of the requested relief."  Winter, 555 U.S. at 24 (quoting Amoco Prod. Co., 480 U.S. 531,

20   542 (1987).

21        Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs

22   demonstrate the requisite likelihood of irreparable harm and show that an injunction is in

23   the public interest, a preliminary injunction can still issue so long as serious questions

24   going to the merits are raised and the balance of hardships tips sharply in Plaintiffs'

25   favor.  Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011)

26   (concluding that the "serious questions" version of the sliding scale test for preliminary

27   injunctions remains viable after Winter).

28

# FACTUAL BACKGROUND[1]

The Association was formed to serve all Jameson Beach Subdivision real property owners including Landon and Nicolaides.  The Jameson Beach Subdivision Tract includes dedicated real property defined as right of way for road purposes ("Association Road Rights").  In 1965, the USFS purchased Camp Richardson Resort subject to ownership rights of the Owners in the Association Roadway.  Two entrances to Camp Richardson Resort exist.  Historically, Camp Richardson patrons used the Cabin Road and owners used Jameson Beach Road to access their homes.  In the past, there was parking enforcement at one entrance to a parking lot which services the Beacon Restaurant near the intersection of Jameson Beach Road and Cabin Road.  Over time, Defendants have allowed more and more people to visit Camp Richardson.  Instead of restricting visitors, Defendants expanded the parking lot, which services the Beacon Restaurant, to capture more parking revenue.  Defendants also moved the entrance from Cabin Road to Jameson Beach Road as a result of which visitors and owners started using the same road.  Defendants also placed a parking kiosk a few hundred yards from the owners' Jameson Beach Road entryway.  According to Plaintiffs, Defendants have caused a massive infusion of people into Camp Richardson which results in:

> "long traffic delays, Owner entrance to Jameson Beach Road is often completely blocked when the parking is full; travel on the Association Roadway is blocked by cars entering and backing out of parking; long wait times occur to enter the Resort; Owners and drivers are forced to traverse around pedestrians and bicycles who are forced onto Jameson Beach Road by lack of any pathway, a rope preventing safe travel off of the road, and use of a kiosk "bypass" lane as a pathway form Hwy. 89 to Beacon or Beach.

(ECF No. 7 at 4.)

_____

[1] The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Memorandum of Points and Authorities in Support of the Application for TRO.  (ECF No. 7.) .

4

1    Thus, as alleged, the parking on Jameson Beach Road and the number of visitors

2  has created dangerous conditions, which contributed to 2009 fatality when the

3  congestion delayed an ambulance's arrival.  According to Plaintiffs, traffic becomes

4  worse on major holiday weekends or traditionally busy spring and summer weekends.

5    Since 2011, Plaintiffs have known that Defendants are asserting ownership rights

6  to the Association Roadway and since that time Plaintiffs have been pursing

7  administrative remedies to assert their ownership rights.  In two years, Defendants

8  intend to eliminate all parking on Highway 89 to create a bike lane which will further

9  increase parking in the Beacon parking lot or on Jameson Beach Road which will

10  exacerbate the problems described above.

11

12                                 **ANALYSIS**

13

14    "Plaintiffs bear the burden of showing that, among other things, they are likely to

15  suffer irreparable injury and the injury must be imminent in nature."  Caribbean Marine,

16  844 F.2d at 674.  Reflecting this requirement, Local Rule 231(b), which governs the

17  timing of motions for TROs, states in full:

18        In considering a motion for a temporary restraining order, the
         Court will consider whether the applicant could have sought
19        relief by motion for preliminary injunction at an earlier date
         without the necessity for seeking last-minute relief by motion
20        for temporary restraining order. Should the Court find that the
         applicant unduly delayed in seeking injunctive relief, the
21        Court may conclude that the delay constitutes laches or
         contradicts the applicant's allegations of irreparable injury
22        and may deny the motion solely on either ground.

23    Plaintiffs argue that their irreparable harm is "exposure to liability for death or

24  serious injury as a result of Defendants' conduct which unnecessarily forces pedestrians

25  and cars into Jameson Beach Road as they head to the beach."  To support their

26  augment Plaintiffs argue that congestion delayed an ambulance from rescuing a

27  drowning victim in 2009.  (ECF No. 7 at 8.) A tragic accident that occurred four years ago

28  does not support the finding of imminent harm.  (ECF No. 7 at 7.)  Further, Plaintiffs'

1   harm is extremely speculative.  Plaintiffs filed their TRO on May 22, 2013 because they

2   fear congestion will worsen on the upcoming Memorial Day holiday weekend.  However,

3   from Plaintiffs' explanation of the facts, Plaintiffs' frustration with Defendants has been

4   worsening "over time."  (ECF No. 7 at 3.)  As alleged, Plaintiffs have been on notice of

5   dangerous congestion conditions since at least 2009 when congestion led to an

6   ambulance delay which consequently led to a death.  Further, Plaintiffs knew that

7   Defendants asserted ownership rights to their property in June of 2011.  (ECF No. 7 at

8   5.)  There is nothing before the Court to suggest that Plaintiffs could not "have sought

9   relief by motion for preliminary injunction at an earlier date without the necessity for

10  seeking last-minute relief by motion for temporary restraining order."  Local R. 231(b);

11  see also Occupy Sacramento v. City of Sacramento, 2:11-CV-02873-MCE, 2011 WL

12  5374748 (E.D. Cal. Nov. 4, 2011) (denying application for TRO for twenty-five day

13  delay).

14         Under the circumstances here, the Court finds that Plaintiffs two to four year delay

15  in seeking injunctive relief constitutes an "undue delay" under Local Rule 231(b).

16  Accordingly, the Court denies Plaintiffs' Motion on procedural grounds alone.  It is

17  therefore unnecessary to address the substantive issues of Plaintiffs' Application at this

18  time.

19

20                                  **CONCLUSION**

21

22         For the reasons just stated, IT IS HEREBY ORDERED that Plaintiffs' Application

23  for a TRO is DENIED without prejudice.  (ECF No. 7.)  Plaintiffs may seek a preliminary

24  injunction through a properly noticed motion.

25  Dated:  May 24, 2013

26

27                                  _____
                                    MORRISON C. ENGLAND, JR., CHIEF JUDGE
28                                  UNITED STATES DISTRICT COURT