UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMESON BEACH PROPERTY OWNERS ASSOCIATION, et al., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, et al., <br><br> Defendants. | No. 2:13-cv-01025-MCE-AC <br><br><br> **MEMORANDUM AND ORDER** |

On May 22, 2013, Plaintiffs Jameson Beach Property Owners Association ("Owners Association"), Gene Landon and Helen Nicolaides (collectively "Plaintiffs") filed the instant action against various defendants, including federal, state and local government entities, for allegedly using Plaintiffs' real property without compensation and in a hazardous manner that exposes Plaintiffs to significant liability. On May 15, 2014, Plaintiffs filed a Motion for a Preliminary Injunction against Defendants Camp Richardson Resort, Inc. ("CRR") and its General Manager Kris Knox (collectively "CRR Defendants") on the basis of their nuisance and trespass claims. ECF Nos. 78; see also ECF Nos. 38, 84. The CRR Defendants timely opposed Plaintiffs' Motion. ECF Nos. 90, 121. For the following reasons, Plaintiffs' Motion is DENIED.[1]

---

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local R. 230(g). See ECF No. 135.

# BACKGROUND[2]

### B. Plaintiffs' Factual Allegations

The Owners Association is an unincorporated association of property owners in the Jameson Beach Subdivision Tract ("Owners") near South Lake Tahoe, California. Plaintiffs Gene Landon and Helen Nicolaides are Owners. The Jameson Beach Subdivision Tract is located in direct proximity to CRR, a resort on Lake Tahoe. CRR is operated by a private entity in the National Forest pursuant to a Special Use Permit ("SUP") issued by the United States Forest Service.

Through this action, Plaintiffs advance claims for civil rights violations and torts against the CRR Defendants based on their operation of Camp Richardson pursuant to the SUP. ECF No. 133 at 2. Plaintiffs' claims arise from concerns pertaining to the number of day users admitted to the camp in excess of 350, traffic congestion, positioning of an entrance kiosk, the number and designation of parking spaces and other parking issues, management of bicyclists, pedestrian foot traffic and noise pollution, as well as CRR's alleged violation(s) of a Use Permit issued by El Dorado County. Id. Plaintiffs' initial Complaint (ECF No. 2)[3] alleged thirteen causes of action: (1) inverse condemnation, (2) deprivation of civil rights due to local government policy and custom; (3) act or ratification by official with final policy making authority in violation of constitutionality guaranteed rights; (4) violation of the equal protection clauses of the U.S. Constitution and the California Constitution; (5) violation of the due process clauses

---

[2] These facts are taken, at time verbatim, from Plaintiffs' initial Complaint and Motion for Preliminary Injunction, ECF Nos. 2, 38, 80, unless otherwise noted.

[3] In response to this Court's May 22, 2014 Order and after the completion of briefing on (and subsequent submission without oral argument of) Plaintiff's instant motion for a preliminary injunction, Plaintiffs filed a First Amended Complaint ("FAC") on July 24, 2014. ECF No. 136. Plaintiffs continue to allege public nuisance, private nuisance, and trespass claims against the CRR Defendants. See id. at 19-20, 23-27. A review of the FAC indicates that Plaintiffs pled additional facts in support of these three claims. To the extent that these new facts were not also included in Plaintiffs' filings in support of their Motion for a Preliminary Injunction, however, they are not considered by this Court for the purposes of this motion and need not be taken as true inasmuch as the CRR Defendants did not have an opportunity to respond to these allegations in their briefing. The CRR Defendants have moved to dismiss these causes of action for failure to state a claim. See Mot., ECF No. 138-1.

of the U.S. Constitution and the California Constitution; (6) private nuisance; (7) trespass; (8) public nuisance; (9) violation of California's unfair competition law; (10) intentional infliction of emotional distress; (11) negligent infliction of emotional distress; (12) unjust enrichment; and (13) negligence.

Plaintiffs contend that the Jameson Beach Subdivision Tract includes dedicated real property which they define as a right-of-way for road purposes running from Highway 89 to the subdivision along Jameson Beach Road. Plaintiffs refer to that real property as the "Association Roadway."[4] The USFS purchased Camp Richardson Resort in 1965. According to Plaintiffs, that purchase was subject to the ownership rights of the Owners in the Association Roadway. Although two entrances to CRR exist, Plaintiffs contend that the entryway historically used by all CRR patrons was Cabin Road. Separately, the Owners used Jameson Beach Road to access their homes from Highway 89. According to Plaintiffs, at an unspecified point in time, CRR moved the Resort entrance from Cabin Road to Jameson Beach Road, thereby increasing the flow of traffic on Jameson Beach Road and the Association Roadway.

In addition, as alleged by Plaintiffs, CRR Defendants, in concert with El Dorado County and the Federal Defendants, allowed the number of people visiting the resort to expand, further exacerbating traffic and congestion on Jameson Beach Road. According to Plaintiffs, the results of this massive infusion of people into the resort area include:

> long traffic delays; Owner entrance to Jameson Beach Road is often completely blocked when the "parking" is full; travel on the Association Roadway is blocked by cars entering and backing out of parking on the Association Roadway; long wait times occur to enter the Resort, as well as proceed to and through the parking kiosk; and Owners' and drivers are forced to traverse around pedestrians and bicycles who are

---

[4] Specifically, Plaintiffs claim that "[l]anguage in Owners' Grant Deeds, including a grant deed dated 1933, confirms ownership of: 'a right of way for road purposes 40 feet in width the center line of which is described as beginning at a point on the east boundary line of Jameson Beach Tract, said point being S. 0 degrees 30 minutes West 315 feet distant from the northeast corner of Jameson Beach Tract and running thence N. 77 degrees 48 minutes West 1702.7 feet to a point 12 ½ feet easterly from the west line of Jameson Beach Tract; thence S. 0 degrees 30 minutes West along the center line of a 25 foot right of way for road purposes to the county road.'" Compl., ECF No. 2 at 4.

3

> forced onto Jameson Beach Road by the lack of any pathway, a rope preventing safe travel off of the road, and use of a kiosk "bypass" lane as a pathway from Hwy. 89 to the Beacon or Beach.

Compl., ECF No. 1 at 6, ¶ 32. Plaintiffs also allege that the USFS and El Dorado are asserting ownership rights to the Association Roadway. In addition, Plaintiffs contend that the USFS has wrongfully and unilaterally paved portions of the Association Roadway without permission.

Further, in order to maximize revenue, Plaintiffs allege that El Dorado, CRR, and the Federal Defendants relocated a parking enforcement kiosk from the entry to the Beacon parking lot to a few hundred yards from the Hwy 89 and Jameson Beach Road entryway. Plaintiffs contend that this change further encroaches on their ownership rights as it diverts drivers to seasonal parking on unimproved land within the Association Roadway that was transformed into parking spaces along the east side and for the length of Jameson Beach Road.

In 2011, Plaintiffs hired Turner & Associates, Inc. to perform a survey of the Association Roadway. Plaintiffs now allege that despite the survey's confirmation of their rights with respect to the Association Roadway, the USFS and the CRR Defendants continue to take unilateral action hostile to their interests. Throughout their Complaint, Plaintiffs allege that parking and traffic congestion on Jameson Beach Road in CRR is creating a worsening safety hazard and interfering with their ability to access their homes.

**B. Procedural Background**

On May 22, 2013, Plaintiffs filed their initial Complaint and also unsuccessfully moved for a temporary restraining order ("TRO"). ECF Nos. 2, 7-9. In their TRO Application, Plaintiffs asked the Court to enjoin Defendants from "risking the public and Plaintiffs serious harm or death, and the Plaintiffs to exposure for liability, from implementing the parking kiosk impediment to traffic circulation, from continuing the rope boundary preventing safe fire and life safety access, as well as safe pedestrian access

to and from the Beach; from parking perpendicular (or at all) along the Association Roadway, and from any other Defendant created unsafe element on or adjacent to Jameson Beach Road, and the Association Roadway." ECF No. 9 at 2 (citing Pl.'s Application, ECF No. 7 at 15-16). Plaintiff's instant motion is based largely on the same conditions. See, e.g., ECF No. 39 at 2. Because of Plaintiffs' two- to four-year delay in moving for a TRO, the Court denied Plaintiff's application without prejudice on procedural grounds alone. See id. at 6. The Court explained that "Plaintiffs have been on notice of [the alleged] dangerous congestion conditions since at least 2009 . . . [and] Plaintiffs knew that Defendants asserted ownership rights to their property in June of 2011." Id.

On September 27, 2013, at the request of the parties, the Court stayed this action until February 1, 2014. ECF Nos. 22, 32. Thereafter, the Court dismissed all causes of action against the United States Forest Service and Nancy Gibson (hereafter the "Forest Supervisor") (collectively, "Federal Defendants") and El Dorado County ("El Dorado") for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. Order, May 22, 2014, ECF No. 83. Plaintiffs' Motion for a Preliminary injunction against the CRR Defendants is currently pending before the Court.[5] On July 24, 2014, Plaintiffs filed a First Amended Complaint. ECF No. 136.

///
///
///

---

[5] On April 18, 2014, Plaintiffs moved for a Preliminary Injunction against CRR and the USFS. ECF No. 38. Plaintiffs sought to enjoin these parties from creating public and private nuisance. Id.; ECF No. 42. On May 22, 2014, the Court denied Plaintiffs' Motion for a Preliminary Injunction, ECF No. 38, as to the Federal Defendants without prejudice as moot because the Court lacked jurisdiction over Plaintiffs' tort claims against these Defendants. See ECF No. 83. Due to a dispute regarding service in this action and therefore whether Plaintiffs' April 18, 2014 Motion applied to CRR, on May 15, 2014, Plaintiffs filed a second motion for a preliminary injunction in which they seek to enjoin CRR and Defendant Kris Knox. See ECF Nos. 78; 79, 80 at 2. Pursuant to the filing of Plaintiffs' second motion for a preliminary injunction, ECF No. 78, the Court denied Plaintiffs' initial motion for a preliminary injunction, ECF No. 38, in its entirety as to all Defendants as moot. Order, ECF No. 87. Plaintiffs and CRR subsequently stipulated that Plaintiffs' pending preliminary injunction application, ECF No. 78, includes all of the documents that were filed in conjunction with its initial motion. See ECF No. 84.

# STANDARD

A preliminary injunction is an extraordinary remedy, and the moving party has the burden of proving the propriety of such a remedy by clear and convincing evidence. See Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 442 (1974). The party requesting preliminary injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 555 U.S. 7, 20 (2008); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting Winter). To grant preliminary injunctive relief, a court must find that "a certain threshold showing is made on each factor." Leiva–Perez v. Holder, 640 F.3d 962, 966 (9th Cir. 2011).

Alternatively, under the so-called sliding scale approach, as long as the Plaintiffs demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in Plaintiffs' favor. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after Winter).

These two alternatives represent two points on a sliding scale, pursuant to which the required degree of irreparable harm increases or decreases in inverse correlation to the probability of success on the merits. Roe v. Anderson, 134 F.3d 1400, 1402 (9th Cir. 1998); United States v. Nutri-cology, Inc., 982 F.2d 1374, 1376 (9th Cir. 1985). Under either formulation of the test for granting a preliminary injunction, however, the moving party must demonstrate a significant threat of irreparable injury. Oakland Tribune, Inc. v. Chronicle Publ'g. Co., 762 F.2d 1374 (9th Cir. 1985).

///

///

# ANALYSIS

### A. Likelihood of Success on the Merits

Although Plaintiffs allege numerous causes of action against the CRR Defendants, Plaintiffs base their preliminary injunction application on three state law claims: Private Nuisance, Public Nuisance, and Trespass. Plaintiffs, in large part, base all three of these claims on the CRR Defendants' alleged interference with Plaintiffs' ownership of the Association Roadway.[6] As set forth below, Plaintiffs fail to demonstrate a likelihood of prevailing on their nuisance or trespass claims.

### 1. Plaintiffs' Nuisance Claims

California law defines a nuisance, in part, as "[a]nything which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property. . . ." Cal. Civ. Code § 3479. A public nuisance is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code § 3480. "A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493. A private nuisance is "a non-trespassory interference with the private use and enjoyment of land." San Diego Gas & Elec. Co. v. Superior Court, 13 Cal.4th 893, 937 (1996); see also Monks v. City of Rancho Palos Verdes, 167 Cal.App.4th 263, 302 (2008).

> A nuisance may be both public and private, but to proceed on a private nuisance theory, the plaintiff must prove an injury specifically referable to the use and enjoyment of his or her land. The injury, however, need not be different in kind from that suffered by the general public.

Monks, 167 Cal. App. 4th at 302; Koll–Irvine Center Property Owners Assn. v. County of Orange, 24 Cal. App. 4th 1036, 1041 (1994).

---

[6] In fact, although Plaintiffs characterize the tort claims at issue as ones for nuisance and trespass, they are, at least in part, at base to be claims related to the alleged taking of property claimed to be owned by the Plaintiffs.

7

> Where the nuisance alleged is not also a private nuisance as to a private individual, [i.e.] where there is no allegation of an interference with a known property right, he does not have a cause of action on account of a public nuisance unless he alleges facts showing special injury to himself in person or property of a character different in kind from that suffered by the general public.

Birke v. Oakwood Worldwide, 169 Cal. App. 4th 1540, 1549–50 (2009); see Venuto v. Owens–Corning Fiberglas Corp., 22 Cal. App. 3d 116, 124 (1971). "Both public and private nuisance claims require a showing of substantial and unreasonable interference, either with a public right or with the enjoyment of a plaintiff's property." Coppola v. Smith, 935 F. Supp. 2d 993, 1018 (E.D. Cal. 2013) (internal citations omitted).

### a. Private Nuisance

As set forth in Plaintiffs' claim for private nuisance, Plaintiffs allege, in part, that

> Defendants, by acting or failing to act, i.e. including, but not limited to: causing cars to park on the Association Roadway, installing a rope-barrier the length of Jameson Beach Road, forcing pedestrians to travel in and on the Association Roadway, installing a parking kiosk, blocking access to the Association Roadway, creating noise, failing to maintain a dedicated fire lane, adversely created a condition or permitted a condition to exist that was harmful to health, was offensive to the sense, was an obstruction of the free passage or use, in the customary manner of Jameson Beach Road and the Association Roadway.

Compl., ECF No. 2 at 20. Plaintiffs further allege that Defendants' actions "interfere[] with Plaintiffs use and enjoyment of [their] land" and, as a result, Plaintiffs have "suffered annoyance, distress, mental anguish, frustration and anxiety." Id.

> [L]iability for private nuisance requires proof . . . that the invasion of the plaintiff's interest in the use and enjoyment of the land was substantial, i.e., that it caused the plaintiff to suffer 'substantial actual damage'" and that "the interference with the protected interest must not only be substantial, but it must also be unreasonable . . . i.e., it must be of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment.

San Diego Gas & Elec. Co. v. Superior Court, 920 P.2d 669, 696-97 (Cal. 1996). "The primary test for determining whether the invasion is unreasonable is whether the gravity of the harm outweighs the social utility of the defendant's conduct, taking a number of

8

factors into account. . . . Fundamentally, the unreasonableness of intentional invasions is a problem of relative values to be determined by the trier of fact in each case in the light of all the circumstances of that case." Id. at 697.

The Court finds that Plaintiffs have failed to show a likelihood of prevailing on their private nuisance claim for two reasons. First, Plaintiffs fail to establish an ownership interest in the property at issue – the so-called "Association Roadway." Second, even if Plaintiffs had established an ownership interest, they fail to show that Defendants' alleged interference is both substantial and unreasonable under the circumstances.

As to Plaintiffs claim of ownership, the CRR Defendants contend that:

> [t]here is not one shred of evidence that any of the [P]laintiffs own the Jameson Beach Road. At most, [P]laintiffs perhaps have an easement over . . . USFS' property, although even that proposition is debatable. Even [P]laintiffs' representations [their Complaint, counsel's declarations, and maps and surveys] fail to establish 'ownership' of the road. Suffice it to say [P]laintiffs have wholly failed to produce evidence they own the road in fee.

Opp'n, ECF No. 90 at 13 n.9.[7] While Plaintiffs submit some documentation which they claim supports their assertion of ownership, these documents do not establish any such ownership interest demonstrating that Plaintiffs are likely to prevail on this point. See, e.g., ECF No. 78-4 at 1-4. Thus, the CRR Defendants' contention is well taken.[8]

---

[7] Plaintiffs' filings indicate that the "Forest Service's position [is] that the federal government owns the land in question." Pl.'s Exhibit 3, ECF No. 61-1 at 19 (Response to Issue 19). Plaintiffs' filing is corroborated by the USFS's filing in a related NEPA action between Plaintiffs and the USFS, which confirms that the USFS avers that the "federal government owns the land in question." Opp'n, ECF No. 50 at 11, 2:14-cv-00718-MCE-AC. Moreover, given that Plaintiffs allege that the USFS (and El Dorado) assert ownership rights, the Court questions whether it would even be appropriate to issue the requested injunction as proposed by Plaintiffs on these grounds without joining the USFS as a party as to the tort claims at issue. See Fed. R. Civ. P. 19(b); ECF No. 80 at 7 (arguing that "if the Forest Service does not own Jameson Beach Road, CRR's use of the Plaintiffs' property constitutes a trespass"). That said, the Court does not have jurisdiction over the tort claims at issue as to the USFS. See ECF No. 83. In any event, because the Court finds that a preliminary injunction is not warranted, the Court need not reach this issue.

[8] Plaintiffs appear to recognize this point as they have subsequently submitted additional evidence in the form of exhibits to their FAC in support of their ownership claim. However, these documents are not before the Court at this time nor have Defendants been presented with an opportunity to address these new supporting documents. See FAC, ECF No. 136. In addition, Plaintiffs added several new claims in their FAC related to their alleged ownership – including causes of action for quiet title, interference with easement, partition, and ejectment, in addition to an amended claim for inverse condemnation. See FAC,

Even if Plaintiffs own a possessory interest in the so-called Association Roadway on Jameson Beach Road, they fail to establish the nature of that interest, making it difficult, if not impossible, for the Court to determine whether any alleged interference with that interest is substantial and unreasonable.  "The primary test for determining whether the invasion is unreasonable is whether the gravity of the harm outweighs the social utility of the defendant's conduct, taking a number of factors into account. . . . [T]he standard is objective: the question is not whether the particular plaintiff found the invasion unreasonable, but whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable." Id. at 938.  "[T]his is a question of fact:  Fundamentally, the unreasonableness of intentional invasions is a problem of relative values to be determined by the trier of fact in each case in the light of all the circumstances of that case." Id. at 938-39 (internal citations omitted).

Without knowing Plaintiffs' interest in the Roadway and the circumstances under which it was created and the purpose for which it was created, it is impossible for the Court to determine whether the alleged interference is unreasonable.  Moreover, notably, no Plaintiff contends that they lack access to their home, only that they often face severe congestion.  Plaintiffs' declarations in this regard consist of generic allegations of harm that, without more, fail to rise to the level of substantial and unreasonable.  For instance, Plaintiffs complain of delays and traffic congestion and of an exposure to liability as a result of the congestion.  See, e.g., ECF No. 114 at 3.  As Plaintiffs acknowledge, their property is located in the vicinity of Lake Tahoe and National Forest lands and the alleged interference occurs largely in season and over long weekends.  See generally ECF No. 117; see also ECF No. 9 (noting that "Plaintiffs filed their TRO on May 22, 2013, because they fear congestion will worsen on the upcoming Memorial Day holiday weekend").

///

---

July, 24, 2014, ECF No. 136.  The CRR Defendants, the USFS, and El Dorado have moved to dismiss and/or strike these new claims.  See ECF Nos. 138-39, 142.

Under these facts, the Court cannot find that that the CRR Defendants' actions amount to substantial and unreasonable interference so as to warrant a finding that Plaintiffs are likely to prevail on the merits on this claim at this time.

### b. Public Nuisance

As set forth in Plaintiffs' claim for public nuisance, Plaintiffs allege, in part, that

> Defendants, by acting or failing to act, i.e. including, but not limited to: causing cars to park on the Association Roadway, installing a rope-barrier the length of Jameson Beach Road, forcing pedestrians to travel in and on the Association Roadway, installing a parking kiosk, blocking access to the Association Roadway, failing to maintain a dedicated fire lane, impacting EMS response times exposing the public at large to serious injury or death, and by creating noise, all involves conduct that is offensive to the senses, is an obstruction of the free passage or use, in the customary manner of Jameson Beach Road / the Association Roadway / and the Forest on the West side of Jameson Beach Road, creates conditions harmful to health, and obstructs the free use of property, so as to interfere with the comfortable enjoyment of life or property.

Compl., ECF No. 2 at 21. Plaintiffs aver that "[a]n ordinary person would be reasonably annoyed or disturbed by the conditions" and that "Plaintiffs [are] harmed different from the type of harm suffered by the general public, including but not limited to exposure to liability for the condition." Id. at 21-22.

California permits a private person to "maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." Cal. Civ. Code § 3493. Therefore, "[a]lthough a public nuisance can support recovery for either personal harm or property damage, a plaintiff suing on this basis must show special injury to himself of a character different in kind - not merely in degree - from that suffered by the general public." Institoris v. City of Los Angeles, 210 Cal. App. 3d 10, 20 (Ct. App. 1989). In addition, as explained above, "[b]oth public and private nuisance claims require a showing of substantial and unreasonable interference, either with a public right or with the enjoyment of a plaintiff's property." Coppola v. Smith, 935 F. Supp. 2d 993, 1018 (E.D. Cal. 2013) (internal citations omitted).

///

Plaintiffs fail to demonstrate that they are likely to prevail on the merits on their public nuisance claim for two reasons. First, the harms alleged by Plaintiffs are the same as those allegedly suffered by the general public, despite Plaintiffs' contention that they "[are] harmed different from the type of harm suffered by the general public, including but not limited to exposure to liability for the condition." Compl., ECF No. 2 at 22; see ECF Nos. 7-2, 114. These blanket assertions of fear of liability, without more, do not establish the type of special injury of a character different in kind - not merely in degree - from that suffered by the general public.[9] Second, as explained above, Plaintiffs fail to make a showing that the CRR Defendants' actions represent substantial and unreasonable interference under the totality of the circumstances. Therefore, the Court finds the Plaintiffs have not demonstrated a likelihood of prevailing on their public nuisance claim.

### 2. Plaintiffs' Trespass Claims

"Under California law to have a cause of action for trespass a plaintiff must prove: (1) the plaintiff's ownership or control of the property, (2) the defendant's intentional, reckless, or negligent entry on the property, (3) lack of permission to enter the property, or acts in excess of the permission, (4) actual harm, and (5) the defendant's conduct as a substantial factor in causing the harm." Cole v. City of Sunnyvale, 2011 WL 4346510, *10 (N.D. Cal. Sept. 14, 2011) (internal citation omitted).

With respect to Plaintiffs' trespass claim, Plaintiffs allege, in part, that "Plaintiffs own the Association Roadway" and that "Defendants intentionally and recklessly enter[] and cause[] others to enter the Association Roadway and also create[] offensive noise impacting Association members at their homes." Compl., ECF No. 2 at 21. However, as explained above, Plaintiffs have failed to establish their ownership or control of the

---

[9] Moreover, as explained below, allegations of speculative future liability fail to establish imminent, irreparable harm. Cf. Cody F. v. Falletti, 92 Cal. App. 4th 1232, 1243 (2001) (explaining that "[a]ppellants have not cited, and we are unaware of, any case in which an easement holder was held responsible for an action that had no relationship to the scope of the easement granted. None of the cited cases imposed a duty to guard against third party torts in the absence of any connection to the scope of the interest represented by the easement.").

Association Roadway. Therefore, Plaintiffs have not demonstrated that they are likely to prevail on the merits of their trespass claim.

### B. Imminent, Irreparable Harm

"Plaintiffs bear the burden of showing that, among other things, they are likely to suffer irreparable injury and the injury must be imminent in nature." Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985); see also Silber v. Barbara's Bakery, Inc., 950 F. Supp. 2d 432, 441 (E.D. N.Y. 2013) (noting that "[a]lthough delay may not preclude the grant of ultimate relief, it may preclude preliminary relief because it undermines the sense of urgency that typically accompanies a motion for preliminary injunction"). As a result, "[a] delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief." Lydo Enterprises, Inc. v. City of Las Vegas, 745 F.2d 1211, 1213 (9th Cir. 1984).

#### 1. Plaintiff's Delay in Seeking Relief

As alleged in their own filings, Plaintiffs have been on notice of the dangerous congestion conditions since at least 2009 when congestion led to an ambulance delay which consequently led to a death. See ECF Nos. 7, 9 at 6. Further, Plaintiffs knew that Defendants asserted ownership rights to their property in 2011. See ECF Nos. 2 at 7, 7 at 5. Moreover, as the CRR Defendants note, there has been parking on the Association Roadway since 1986, yet Plaintiffs did not file this action until 2013. To explain their delayed filing, Plaintiffs contend that "[e]ach season the problems increase and continue to grow" and that "when it became clear settlement would require filing litigation, they did." ECF No. 117 at 4-5.

The Court finds that Plaintiffs' delay in seeking injunctive relief undercuts their claims of imminent, irreparable harm. In May 2013, Plaintiffs sought a temporary

13

restraining order based largely on the same grounds as the instant motion.  In fact, prior to submitting new affidavits with their Reply brief in support of their motion for a preliminary injunction, Plaintiffs merely relied on the affidavits filed in May 2013 in support of their TRO.[10]  See, e.g., ECF No. 39 at 2 (stating that the declarant "reviewed [his] declaration in support of Petitioner's Motion for Temporary Restraining Order, and all of the conditions of Camp Richardson Resort described therein continued to exist during the 2013 season").  While Plaintiffs argue that the conditions have subsequently worsened, the declarations submitted with their Reply contain allegations of sporadic instances of alleged harm such as an altercation with an individual who worked at a Renaissance Fair at CRR and examples of the harms previously identified by Plaintiffs.[11]  As the CRR Defendants noted, some of these "new" conditions actually occurred years ago.  See ECF Nos. 114 at 2, 121 at 8.  For all of these reasons, the Court finds that "[Plaintiffs'] long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."  Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1377 (9th Cir. 1985).

### 2. Lack of Imminent, Irreparable Harm

Even putting Plaintiffs' delay in seeking relief aside, their generic, blanket, and speculative assertions of harm fail to carry their burden of demonstrating that they face

---

[10]  The Court permitted Defendants to file a Sur-Reply to Plaintiffs' new evidence.  See Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996); ECF Nos. 121, 128.

[11] Plaintiffs also included a number of allegations of illegal activity by Defendants, such as violations of the Forest Management Plan.  See Amended Reply, ECF No. 117 at 8.  However, these allegations are only tangentially related to Plaintiffs' nuisance and trespass claims, and, as Plaintiffs are aware, many of these claims are being litigated in a related case, Jameson Beach Property Owners Association et al v. US Forest Service et al, 2:14-cv-00718-MCE-AC, in which Plaintiffs allege violations of the National Environmental Policy Act ("NEPA"), the Administrative Procedure Act ("APA"), and the National Forest Management Act ("NFMA").  Other allegations of illegal conduct, such as CRR's purported violation of a county permit by securing a fourth liquor license, are either unsupported or unrelated to the claims at issue.  Moreover, the Court questions whether Plaintiffs have standing to contest permits issued by El Dorado or the Special Use Permit issued by the United States Forest Service, and if they do, whether the violations would constitute irreparable harm.  Cf. United States v. Petersen, 91 F. Supp. 209, 213 (S.D. Cal. 1950) (explaining that where the United States sought an injunction restraining defendants from selling liquor without a federal permit, because the acts of defendants constituted only a violation of regulations, a criminal remedy at law was therefore adequate and an injunction was not warranted under the circumstances).

actual and imminent harm absent the requested relief.  Plaintiffs summarize their argument as follows:

> The ongoing injury at issue essentially boils down to three things: (1) the absence of Life Safety Access to the Resort, and (2) environmental harm caused by conduct that has not undergone NEPA review, and is known to cause harm based on the Forest Service' own allegations, and (3) traffic circulation that is hazardous including causing a high risk of auto / pedestrian conflict.

Mot., ECF No. 80 at 6.  Later, in an attempt to clarify, Plaintiffs state

> [t]o be precise.  Plaintiffs' position is that irreparable harm is present and been proved on two grounds[:] 1) Defendants conduct is illegal. Violations of the Forest Management Act, and a Forest Plan, under the law, are generally found to constitute irreparable harm.  2) Plaintiffs have not rested on their laurels and done nothing with a static situation.  When problems became intolerable in recent years, they began negotiating.  When the problems continued to worsen, they were successful in securing some 'fixes' and not others.

Amended Reply, ECF No. 117 at 4.  None of these representations constitute a showing of imminent, irreparable harm.

First, as explained above, Plaintiffs' allegations that Defendants have violated NEPA are at issue in a related case.  In fact, Plaintiffs moved for a preliminary injunction on that basis in that case.  See Mot., April 17, 2014, ECF No. 12, 2:14-cv-00718-MCE-AC.  On June 6, 2014, the Court denied Plaintiffs' Motion without prejudice.  ECF No. 59, 2:14-cv-00718-MCE-AC.[12]  In any event, despite Plaintiffs' unsupported assertions of irreparable harm based on alleged violations of NEPA, the Forest Management Act, and a Forest Plan, Plaintiffs' affidavits in this case do not show any irreparable harm relating to these three bases.

In support of their contention that traffic circulation and the absence of life safety access amount to irreparable harm, Plaintiffs point to a 2009 death, as well as fears of liability.  Neither basis supports their position.  In their Motion, Plaintiffs argue that "EMS

---

[12] The Court explained that Plaintiffs failed to submit any affidavits on the question of irreparable injury as it related to their NEPA claims in violation of Local Rule 231(d)(2).  ECF No. 59, 2:14-cv-00718-MCE-AC.  In fact, in that case, Plaintiffs once again attempted to merely rely on the declarations filed in support of their unsuccessful May 2013 TRO application in this case.  Plaintiffs do not allege NEPA claims in this action nor have they renewed their motion in the related case.

15

response time was a problem in a fatal incident.  In 2009, an off-duty police officer resident of Jameson Beach, along with his brother and friend, responded to shouts of a drowning victim." ECF No. 38 at 9 (citing ECF No. 7-13).  According to Plaintiffs, "[t]he congestion on Jameson Beach Road places Owners, their guests, and Camp Richardson resort-goers' lives at risk because of the dangerous and unsafe conditions created and continued by the Resort Defendants." Id.  However, as Defendants note, "Plaintiffs' reference to a 2009 death, while in the hospital, of a drowning victim is devoid of any reliable expert evidence as to the cause of death or the relation, if any, to alleged delay in the arrival of medical treatment." Opp'n, ECF No. 90 at 11.[13]  Moreover, this single incident which occurred five years ago, though tragic, is not an example of imminent, irreparable harm for which a preliminary injunction is appropriate.  See Capital City Pub. Co. v. Trenton Times Corp., 575 F. Supp. 1339, 1352 (D. N.J. 1983) (noting that to prevail, "the moving party must show an 'imminent threat' which is more than mere speculation or fear as to what may ensue in the future"); Nissin Foods (USA) Co., Inc. v. N. L. R. B., 515 F. Supp. 1154, 1156 (E.D. Pa. 1981) (explaining that a "plaintiff must show an 'imminent threat' rather than the mere 'possibility of remote future injury'").  A single example of a past injury that _may_ be related to Plaintiffs' claims is not sufficient.

As to Plaintiffs' fears that they will be subject to liability in the event of an accident on the Association Roadway, these claims are too generic and speculative to constitute imminent, irreparable harm.  See Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1209 (E.D. Cal. 2010) (explaining that "[a]ssertions of harm cannot be generic: they must be precise and detailed enough to enable the Court to evaluate the harms pertaining to injunctive relief in the context of the scope of the injunction sought"); see also Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) (explaining that

---

[13] Defendant Kris Knox, the General Manger for CRR, notes that "[o]n occasion, emergency vehicles experience difficulty traveling on Highway 89 responding to calls from the South Lake Tahoe area. . . . To my knowledge, emergency vehicles have always been able to pass through the CRR area of Highway 89." ECF No. 92 at 8.  Knox continued by stating "I have never been contacted or advised by law enforcement or emergency responder personnel about any complaint or issue regarding access to Jameson Beach Road by emergency responders." Id. (emphasis in original).

"[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction"). The burden rests upon Plaintiffs "to show irreparable injury, and this must be in the nature of an imminent threat as opposed to a possibility of remote injury in the future." Nissin Foods (USA) Co., Inc., 515 F. Supp. at 1156. Plaintiffs have failed to meet this burden.

### C. Balancing the Hardships and Public Interest

As it is here, "[i]n cases where the public interest is involved, the district court must also examine whether the public interest favors the [moving parties]." Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992). The Plaintiffs "bear the initial burden of showing that the injunction is in the public interest." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009). "[T]he court should weigh the public interest in light of the likely consequences of the injunction." Id. (emphasis in original). Cf. Eccles v. Peoples Bank of Lakewood Vill., 333 U.S. 426, 434 (1948) (concluding that a grievance that is "too remote and insubstantial" or "too speculative in nature" does not justify an injunction or declaratory relief). As Defendants explain, Plaintiffs' requested relief, including the removal of the traffic management kiosk and parking spaces on the Association Roadway, "would be harmful to CRR's efforts to manage pedestrian, bicycle and vehicle traffic on Jameson Beach Road for the benefit of the general public, CRR guests and Jameson Beach homeowners and guests." ECF No. 92 at 4. Moreover, limiting access to CRR in the manner proposed by Plaintiffs would represent an unwarranted curtailment of the public's access to National Forest System lands. Based on the record before it, the Court finds that the balance of hardships weighs against the issuance of a preliminary injunction and that the public interest would not be served by granting the relief requested by Plaintiffs.

///
///
///
///

## CONCLUSION

As set forth above, Plaintiffs failed to demonstrate that they are likely to prevail on the merits of their trespass and nuisance claims, that they will suffer imminent irreparable harm absent the requested relief, or that the balancing of hardships and the public interest weigh in their favor.  Therefore, Plaintiffs' Motion for a Preliminary Injunction (ECF No. 78) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:  September 3, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT